Avery, J.
This case has been examined upon an application for a writ of error to the court of common pleas for Tuscarawas county.
An indictment was found by the grand jury, at the November term, 1850, of the said court, against Thomas Sharp and said Henry Sharp, for an assault with an attempt to murder John E. Walton.
The defendants were tried at the same term, by a petit jury, who found said Henry guilty, as charged in the indictment, and said Thomas guilty of an assault and battery only.
The counsel, in behalf of Henry Sharp, asked the court upon the trial, to give certain instructions to the jury, which *386 the court refused to give, whereupon the counsel excepted; they excepted also to certain instructions which were given.
The counsel for Henry Sharp, after the verdict was returned, moved the court to grant him a new trial, because the verdict was against the evidence, and because the court erred in their charge to the jury.
The evidence is set out in the bill of exceptions, and a copy given of the instructions asked, as well as of the instructions actually given.
The first- count in the indictment charges the offense in the following words, to wit:
“ That Thomas Sharp,, late of the county of Tuscarawas aforesaid, and Henry Sharp, late of the county of Tuscarawas aforesaid, on the fifteenth day of September, in the year of our Lord one thousand eight hundred and fifty, with force and arms, in the county of Tuscarawas aforesaid, in and upon the body of one John F. Walton, then and there being, unlawfully did make an assault, and him, the said John F. Walton, then and there did beat, wound and ill-treat, with intent in and upon him, the said John F. Walton, then and there feloniously, willfully, and of their own malice aforethought, to commit a murder and other wrongs, etc.”
The intent is described in the second ' count as follows: “ With intent him, the said John F. Walton, then and there feloniously, willfully, and of their malice aforethought to kill and omurder.”
After an examination of the evidence as shown by the bill of exceptions, the court can find no error in the refusal to grant a new trial on the alleged ground, that the verdict was against the evidence.
The first instruction requested for the jury was this : “ If they were convinced by the testimony, the said Henry Sharp made said assault and battery, without the intent purposely, and of malice aforethought, to murder said Walton, the jury should find said defendant guilty of an assault and battery only.
*387 This instruction the court refused to give, but charged the jury, if they were convinced by the proof, that the defendants, or either of them, had assaulted said Walton, with deliberate and premeditated malice, willfully and maliciously, with intent to murder, or had made such assault without premeditation and deliberation, but wilfully and maliciously, with intent to murder, then the jury should find one or both guilty, as the proof might convince them. This was instructing substantially in the words of the statute, as found in the two sections defining murder in the first and second degrees. Swan’s Statutes 229.
The charge was doubtless right, in holding that by the law, under which -the defendants were prosecuted, the jury might convict them of an assault with intent to murder, whether it was murder in the first or second degree ; and in the opinion of this court, the words used in the indictment to set out the intent, could not limit the power or obligation of the jury so to convict.
There was no error in this charge of the court, nor in the refusal to charge.
The next instruction requested was in these words: “ That in inquiring for the intent with which said defendant, Henry, assaulted said Walton, it was proper for the jury, and they should consider the relation or kindred óf said Henry Sharp to the said Thomas Sharp, in connection with the condition and circumstances of his father, the said Thomas Sharp, at the time when the said assault was made by the said Henry.” Which charge the court refused to give.
A majority of this court find no error in the refusal to give the charge as requested. We do not deny the principle applying to some of the natural and civil relations, which is held to furnish an excuse to persons under certain circumstances, and an exemption from civil punishment, because they are so related. It is conceded that parent and child, husband and wife, master and servant would be excused, should they even kill an assailant in the necessary defense of each other. But not unfrequently it will happen, from *388 the facts proved upon the trial, that this principle can have no application, and therefore in such cases it need not be brought to the notice of the jury: for it could not be allowed properly to influence their verdict.
If a father and son combine to assail another, and commit violence upon his person, they may both stand in the relation of principal offenders, and be held liable in the same manner as if either had combined with any other person to commit similar violence. And in such case no intent to aid or defend each other on account of the relationship subsisting between them, can be inferred by court or jury. '
In the case under examination there was evidence, coming from Walton and others, that Thomas Sharp, the father, ran into the house and came out, bringing in his hands a poker; that he struck Walton several blows with it, one of which, according to the testimony of Walton, broke his arm. There is testimony also, from which an inference may be drawn, that at the time when the blows were inflicted by the father, the son was striking his knife into the body of Walton. It is true, it may be inferred from the evidence, that Walton was flourishing his knife at the same time, and even that he designed to use it against the father. Yet from the manner of the attack upon Walton, as described by the witnesses, the inference is still admissible, that the intent of Henry Sharp was not to defend his father, but in connection with him to make a murderous assault upon Walton. In such a case, their relationship would be a matter of no consequence in determining upon the guilt of either. Henry Sharp was at liberty, no doubt, to give evidence, that his intent really was, to protect his father from violence or imminent danger, and so he was at liberty, if he could find the proof, to show that the act was done with any intent, other than that alleged in the indictment, the intent to commit a murder. But the court, being in possession of all the evidence, may have considered, that there was no foundation for the claim put forth for him on-the trial. Whether, however, they so considered or not, they were not bound, nor at *389 liberty, to assume in their charge, that the relationship ought, as a matter of course, to be taken into account by the jury; that in inquiring for the intent of Henry Sharp, when he made the assault, it was the duty of the jury to consider how he stood related to Thomas Sharp.
Error is not to be presumed, it must be shown. The call upon the court might have been easily put in a shape to secure a charge upon the point of law involved, to wit: the right of one of the prisoners, growing out of his relationship to the other. In such a case it is to be presumed the court would give the charge. A refusal to do so would furnish sufficient ground to reverse their judgment, but there was no error in the refusal to charge as above requested.
The charge which was actually given, after that request,. is as follows:
“ That it was true, as a principle of law, that a son might justify an assault in defense of his father, if the father were not in the wrong. But if Thomas Sharp had wantonly made the first assault upon Walton, and this fact should appear from the proof, then Henry, the son, could not avail himself of this relation, in his defense, if it appeared from the proof that he, Henry, came into the conflict for the purpose of aiding his father in an unlawful assault.”
We are all of the opinion that there was no error in this charge.
The counsel of Henry Sharp having failed in their motion for a new trial, urged before the court below a motion in arrest of judgment, and assigned the following reasons :
“ 1st. The indictment is defective in this, that it sets forth no crime known to the laws of the State..
“ 2d. It charges the assault upon Walton with intent feloniously, willfully, and of their malice aforethought, to commit a murder.
“ 3d. It does not charge a murder either in the first or second degree, as defined by the statute.
“ 4th. The indictment is in other respects illegal.”
We are of the opinion that the indictment is sufficient.
*390 It was framed upon the 17th section of the act providing for the punishment of crimes. Swan’s Statutes 232. The offense embraced in this section is an assault with intent to commit a murder, rape, or robbery. The crime defined in the section, as an assault with intent to murder, is a single offense, and as such may be described in a single count in the indictment. No principle, it is believed, nor any benefit likely to result from the practice, requires the offense to be set out in two counts; one charging the intent to commit a murder in the first degree, and the other in the second degree.
This indictment does not contain the specific allegations requisite in an indictment for murder in the first or second degree under the statute. It copies, in that part which sets out the intent, the common law form for describing such intent, as found in the indictment for an assault with intent to murder. Malice aforethought, as here set out, will be found charged also in the common law indictment for murder. The jury, however, under the indictment for murder, may return a verdict for manslaughter, which excludes the idea of malice aforethought, and the introduction in this case of the words malice aforethought, should not have the effect of restricting the jury to the finding merely of an intent to commit murder in the first degree. Under our statute, when there is but a single count in the indictment, which specifically alleges deliberate and premeditated malice, the prisoner may, notwithstanding, be convicted of the lesser crime of murder in the second dégree, or of manslaughter.
The crime of rape, under our statute, like the crime of murder, “is very different, both in its description and punishment, as found in two separate sections of the statute. Swan’s Stat. 230. Under one of these, the 4th section, a person having carnal knowledge of his daughter or sister, against her will, is deemed guilty of a rape, .and on conviction to be imprisoned in the penitentiary for .life.
By the 5th section, if any person shall have carnal knowledge of any other woman, or a female child,' or if any male *391 person of the age of seventeen years and upwards, shall carnally know and abuse a female child under ten years, with her' consent, such person shall be deemed guilty of a rape, and upon conviction, imprisoned not more than twenty nor less than ten years. The law describing the offense of an assault like that in the 17th section, with intent to commit a rape, came under examination before this court, in the case of Bowles,v. The State of Ohio, 7 Ohio Rep., part 2, 248. There the court allude to a distinction to be taken in passing upon the requisite averments, between an indictment for the crime of rape itself, and one drawn upon the section punishing an assault with intent to commit the crime.. And they decide, that an indictment in this last case, need not specifically characterize the person upon whom the assault was made. The person assaulted was described in the count on which the verdict of guilty had been rendered, as Eliza Johnson, a child. Without the expression, “ a .child,” no one could conjecture to which of the sections defining a rape the count was intended to apply; and yet in the opinion it is 'stated, that this part of the indictment might be regarded as surplusage.
In the case now under consideration, all the requisite allegations are found, we think, in the indictment It is unnecessary, when it is framed to reach the offense in this 17th section, that it should contain all the specific averments required in an indictment for murder under other sections of the statute.
In the opinion of a majority of the court, no one of the errors assigned is sufficient to reverse the judgment.

The application for a writ of error is refused.

Caldwell, J., dissented.